## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

JESUS ALEJANDRO G. A.,

          Petitioner,

v.

TODD BLANCHE,[1] *Acting Attorney General*; MARKWAYNE MULLIN,[2] *Secretary, U.S. Department of Homeland Security*; TODD M. LYONS, *Acting Director of Immigration and Customs Enforcement*; DAVID EASTERWOOD, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*; and JOEL BROTT, *Sheriff of Sherburne County*,

          Respondents.

Case No. 26-cv-1932 (LMP/ECW)

**ORDER GRANTING
HABEAS PETITION**

---

Jason L. Schellack, **Autism Advocacy & Law Center, LLC, Minneapolis, MN**, for Petitioner.

David W. Fuller and Trevor Brown, **United States Attorney's Office, Minneapolis, MN**, for Respondents.[3]

---

[1]    Todd Blanche, Acting Attorney General, is substituted in place of former Attorney General Pam Bondi pursuant to Federal Rule of Civil Procedure 25(d).

[2]    Markwayne Mullin is substituted in place of former Secretary of Homeland Security Kristi Noem pursuant to Federal Rule of Civil Procedure 25(d).

[3]    Respondent Joel Brott has not entered an appearance or otherwise participated in these proceedings.  As used in this order, "Respondents" and "Government" do not refer to and are not intended to include Sheriff Brott.

Petitioner Jesus Alejandro G. A. filed a petition for a writ of habeas corpus alleging that Respondents (the "Government") have detained him in violation of the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA").  *See generally* ECF No. 1.  For the reasons discussed below, the Court grants Jesus Alejandro G. A.'s petition.

## FACTUAL BACKGROUND

Jesus Alejandro G. A. is a resident of Faribault, Minnesota, and a citizen of Venezuela.  ECF No. 1 ¶ 13.  He arrived at the United States border on May 13, 2024, without documents sufficient for lawful entry into the United States.  ECF No. 8-2 at 2.  He expressed an intention to apply for asylum,[4] was served a Notice to Appear, and was paroled into the United States.  *Id.*; ECF No. 8-4 at 1–2.  Jesus Alejandro G. A. has since obtained work authorization and is active in and volunteers for his church.  ECF No. 1 ¶ 16.

On March 13, 2026, the Faribault Police Department responded to a reported domestic dispute involving Jesus Alejandro G. A. and a woman with whom he was in a relationship.  *See State v. [G. A.]*, No. 66-CR-26-599, Index #1 at 1–2 (Minn. Dist. Ct. Mar. 13, 2026).[5]  Jesus Alejandro G. A. was arrested and charged with False Imprisonment, in violation of Minn. Stat. § 609.255, subd. 2, and Domestic Assault, in violation of Minn. Stat. § 609.2242, subd. 1(2).  *Id.* at 1, 6.  He was granted conditional release after a bond

---

[4]    There is no record of Jesus Alejandro G. A. ever submitting such an application. *See* ECF No. 8-3 at 2–3.

[5]    The Court may take judicial notice of public judicial records.  *E.g.*, *Thompson v. R.J. Reynolds Tobacco Co.*, 760 F.3d 913, 918 (8th Cir. 2014); *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005).

hearing in the Rice County District Court on March 16, 2026, *see id.*, Index #12 at 1 (Minn. Dist. Ct. Mar. 16, 2026).

The same day, Jesus Alejandro G. A. was taken into custody by U.S. Immigration and Customs Enforcement ("ICE"), ECF No. 8-3 at 2, pursuant to an immigration detainer and warrant for his arrest issued on March 13, 2026, ECF No. 8-5 at 1–2, 5; ECF No. 8-1. When questioned by deportation officers, Jesus Alejandro G. A. "freely admitted that he was unlawfully present in the United States." ECF No. 8-3 at 2. He remains in ICE custody at the Sherburne County Jail in Elk River, Minnesota. ECF No. 1 ¶¶ 17, 21.

## PROCEDURAL BACKGROUND

Jesus Alejandro G. A. filed a petition for a writ of habeas corpus on March 18, 2026. ECF No. 1. First, he asserted that his continued detention without a bond hearing violates his right to due process under the Fifth Amendment. *Id.* ¶¶ 32–39. Second, he asserted that the Government wrongfully detained him pursuant to the mandatory detention provision of 8 U.S.C. § 1225(b)(2). *Id.* ¶ 31. Jesus Alejandro G. A. contended that he is not subject to mandatory detention under that statute but was subject to detention, if at all, under 8 U.S.C. § 1226(a). *Id.* He requested either his immediate release from custody or a bond hearing before an immigration judge to determine whether he is entitled to be released pending the conclusion of his removal proceedings. *Id.* at 19.

The Court ordered the Government to respond to Jesus Alejandro G. A.'s petition by March 24, 2026. ECF No. 3 at 2. The Court noted that it had previously concluded the mandatory detention provision of Section 1226(b)(2) did not apply to noncitizens who, like Jesus Alejandro G. A., were detained while in the interior of the United States rather than

3

while physically entering the United States at a border or port of entry. *See* ECF No. 3 at 2 (first citing *Roberto M. F. v. Olson*, No. 25-cv-4456 (LMP/ECW), 2025 WL 3524455, at *4 (D. Minn. Dec. 9, 2025); and then citing *Victor Hugo D. P. v. Olson*, No. 25-cv-4593 (LMP/DTS), 2025 WL 3688074, at *2–3 (D. Minn. Dec. 19, 2025)). Accordingly, the Court ordered the Government to include in its response a "good-faith argument as to whether—and if so, why—this matter is materially distinguishable, either factually or legally," from *Roberto M. F.* and *Victor Hugo D. P. Id.* at 3.

The parties later agreed to extend the deadline for the Government's response to March 26, 2026. ECF No. 6. On March 25, 2026, the U.S. Court of Appeals for the Eighth Circuit issued its decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). In short, the Eighth Circuit concluded that the interpretation of Section 1225(b)(2) on which this Court relied in cases like *Roberto M. F.* and *Victor Hugo D. P.* is incorrect. *See Avila*, 170 F.4th at 1132–38. Instead, the Eighth Circuit held that Section 1225(b)(2), as a matter of statutory interpretation, "mandates the detention of unadmitted aliens already present inside the United States." *Id.* at 1136. But *Avila* did not address the question of due process—that is, whether the mandatory detention provision of Section 1225(b)(2), as applied to a noncitizen who is present in the interior of the United States without authorization, is consistent with constitutional protections.[6] *See Avila*, 170 F.4th at 1132–38.

---

[6]    The Eighth Circuit remanded the case to the district court "for further proceedings consistent with [its] opinion." *Avila*, 170 F.4th at 1138. Presumably, those further proceedings would involve addressing any due process claim, which the district court did

The Government timely responded to Jesus Alejandro G. A.'s petition on March 26, 2026. ECF No. 7. The Government first argued that the Eighth Circuit's decision in *Avila* foreclosed Jesus Alejandro G. A.'s statutory argument that he was wrongfully detained under Section 1225(b)(2) and that, in any event, his arrest on charges of false imprisonment and misdemeanor domestic assault triggers the mandatory detention provision of Section 1226(c).[7] ECF No. 7 at 3, 7–8. The Government also argued that "[t]hose conclusions put Petitioner's Due Process claims in this case on shaky ground because he is essentially challenging the constitutionality of § 1225(b)'s mandatory detention provisions." *Id.* at 8.

Jesus Alejandro G. A. filed a reply on March 31, 2026. ECF No. 9. Jesus Alejandro G. A. conceded that *Avila* "renders his request for habeas relief under 8 U.S.C. § 1225" moot. *Id.* at 2. He disputed, however, whether Section 1226(c) applies here, noting that the Minnesota statutes under which he is charged do not include "serious bodily injury" as an element. *Id.* at 4; *see also* 8 U.S.C. § 1226(c)(1)(E)(ii). And Jesus Alejandro G. A., citing the dissent in *Avila*, noted that he is still entitled to "habeas relief on due process grounds." *See* ECF No. 9 at 4 (citing *Avila*, 170 F.4th at 1140 n.8 (Erickson, J., dissenting)).

---

not reach in the first instance. *See Avila v. Bondi*, No. 25-cv-3741 (JRT/SGE), 2025 WL 2976539, at *2 n.4, *5–7 (D. Minn. Oct. 21, 2025).

[7]     The Government incorrectly asserted that the domestic assault offense for which Jesus Alejandro G. A. has been charged is a felony, ECF No. 7 at 7–8, but it is, in fact, a misdemeanor, *see* Minn. Stat. § 609.2242, subd. 1.

After reviewing and considering the parties' initial briefing, and given the procedural circumstances and timing of this case, the Court ordered the parties to submit additional briefing addressing three issues: (1) whether the crimes for which Jesus Alejandro G. A. has been charged trigger the mandatory detention provision of Section 1226(c); (2) whether the Eighth Circuit's decision in *Banyee v. Garland*, 115 F.4th 928, 931–34 (8th Cir. 2024), which held that mandatory detention under Section 1226(c) does not raise due process concerns, applies to Jesus Alejandro G. A.'s due process challenge to mandatory detention under Section 1225(b)(2); and (3) whether the holdings of several district courts granting habeas relief under the Due Process Clause in similar cases are applicable to this case. ECF No. 10 at 2–3. The parties timely submitted all briefing. *See* ECF Nos. 13–16.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305 (2001).

Jesus Alejandro G. A.'s petition presents a novel legal situation that has not been squarely addressed by the Supreme Court or the Eighth Circuit. There is no clear precedent to guide the Court. That is because for decades, the Government invoked Section 1226(a) to justify discretionary detention of "noncitizens found in the United States without legal

status and therefore subject to removal." *Selvin Adonay E. M. v. Noem*, No. 25-cv-3975 (SRN/DTS), 2025 WL 3157839, at \*6 (D. Minn. Nov. 12, 2025) (citation omitted). The Government's push to invoke the mandatory detention authority of Section 1225(b)(2) against such noncitizens *en masse* arose from a July 2025 guidance memo from ICE, which concluded that Section 1225(b)(2) applied to any noncitizen in the United States who did not possess lawful immigration status. *See* Immigr. & Customs Enf't, Interim Guidance Regarding Detention Authority for Applications for Admission (July 8, 2025).[8]

The Government's push gained real teeth on September 5, 2025, when the Board of Immigration Appeals ("BIA") decided that immigration judges "lack authority to hear bond requests or to grant bond" to noncitizens who are unlawfully present in the United States. *In re Yajure Hurtado*, 29 I. & N. Dec. 216, 216, 225 (B.I.A. 2025). Although this Court and hundreds of other federal courts disagreed with the Government's interpretation of Section 1225(b)(2), *see Roberto M. F. v. Olson*, No. 25-cv-4456 (LMP/ECW), 2025 WL 3524455, at \*4 (D. Minn. Dec. 9, 2025), the Eighth Circuit agreed with the Government's reading of Section 1225(b)(2) on March 25, 2026, *see Avila*, 170 F.4th at 1136.

Given the novelty and importance of these statutory and constitutional challenges post-*Avila*, the Court sought supplemental briefing, ECF No. 10, which narrowed the issues in dispute. The Government now "agree[s] this case is not governed by 8 U.S.C. § 1226(c)." ECF No. 16 at 1. And Jesus Alejandro G. A. concedes that *Avila* renders his request for statutory relief under Section 1225(b)(2) moot. ECF No. 9 at 2. The parties

---

[8]      This guidance may be found at https://perma.cc/EDD5-35FV.

therefore essentially agree that Jesus Alejandro G. A. is detained under Section 1225(b)(2). But the parties disagree as to whether, consistent with the Due Process Clause, the Government may continue to detain Jesus Alejandro G. A. under Section 1225(b)(2) without providing him a bond hearing.

Having carefully considered the parties' arguments, the caselaw on which they rely, and the developing caselaw on this issue,[9] the Court concludes that the Due Process Clause affords Jesus Alejandro G. A. a bond hearing.

---

[9]    *See, e.g.*, *Manuel G. v. Blanche*, No. 26-cv-2385 (SRN/ECW), 2026 WL 1256358, at *2–5 (D. Minn. May 7, 2026) (finding petitioner's detention under Section 1225(b)(2) without an individualized bond hearing violates his rights under the Due Process Clause); *Axel J. M. C. v. Stanski*, No. 26-cv-2281 (JRT/EMB), 2026 WL 1171344, at *2–4 (D. Minn. Apr. 29, 2026) (same); *Heriberto R. E. v. Blanche*, No. 26-cv-2227 (JWB/LIB), ECF No. 12 at 5–8 (D. Minn. May 1, 2026) (same); *Osman J. M. A. v. Blanche*, No. 26-cv-2123 (DWF/DJF), 2026 WL 1005056, at *2–3 (D. Minn. Apr. 14, 2026) (same); *Orlando R. V. V. v. Blanche*, No. 26-cv-1903 (MJD/SGE), ECF No. 11 at 5–21 (D. Minn. Apr. 28, 2026) (same); *Selvin Adonay E. M. v. Noem*, 817 F. Supp. 3d 720, 733–35 (D. Minn. 2025) (same); *Gomez v. Bondi*, No. SA-26-CA-00727-XR, 2026 WL 753307, at *6–15 (W.D. Tex. Mar. 13, 2026) (same); *but see, e.g.*, *Brayam G. G. v. Easterwood*, No. 26-cv-1985 (DMT/EMB), ECF No. 22 at 3–4 (D. Minn. Apr. 15, 2026) (rejecting due process argument by habeas petitioner detained under Section 1225(b)(2)); *Kanda v. Cole*, No. 5:26-cv-158, 2026 WL 1014400, at *2–3 (S.D. Tex. Apr. 10, 2026) (same).  Indeed, district courts are now grappling without much guidance to determine what is left when statutory authority does not answer the constitutional question of what process is due.  As Judge Erickson noted in his dissent in *Avila*, after the Fifth Circuit's decision in *Buenrostro-Mendez*, multiple district courts in the Fifth Circuit have granted similar habeas petitions on due process grounds.  *Avila*, 170 F.4th at 1140 n.8 (Erickson, J., dissenting) (citing *Alvarez-Rico v. Noem*, No. 4:26-cv-729, 2026 WL 522322 (S.D. Tex. Feb. 25, 2026)); *see Gomez*, 2026 WL 753307, at *6–15; *see also Lopez-Campos v. Raycraft*, Nos. 25-1965/1969/1978/1982, 2026 WL 1283891, at *11–13 (6th Cir. May 11, 2026) (finding no error in the conclusion of district courts that petitioners were entitled to individualized bond hearings given the significant time they had spent within the United States).

## I.      Statutory Framework

Under the INA, a noncitizen may be subject to mandatory detention under several provisions, including Section 1225(b) or Section 1226(c). Section 1226(c) provides that the "Attorney General shall take into custody" any noncitizen who has been "charged with," "arrested for," or "convicted of" any "acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person."  8 U.S.C. § 1226(c)(1)(E)(ii).    Unlike noncitizens detained under Section 1226(a), noncitizens detained under Section 1226(c) are not entitled to a bond hearing.  *See id.* § 1226(a)(2) (stating that noncitizens covered by Section 1226(c) are excluded from the discretionary-release provisions of Section 1226(a)).

Section 1225(b) contains two provisions under which noncitizens who are "applicants for admission" may be subject to mandatory detention.  *See* 8 U.S.C. § 1225(a)–(b).  First, Section 1225(b)(1) applies to "applicants for admission" who are "arriving in the United States" and subjects such noncitizens to removal "without further hearing or review."  *Id.* § 1225(b)(1)(A)(i).  However, if the noncitizen indicates either an intention to apply for asylum or a fear of persecution, *id.*, the noncitizen "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed," *id.* § 1225(b)(1)(B)(iii)(IV).  Second, Section 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), and provides that

noncitizens "shall be detained" for removal proceedings if they are not "clearly and beyond a doubt entitled to be admitted," 8 U.S.C. § 1225(b)(2)(A).

Although Section 1225(b)(2) generally requires mandatory detention, a noncitizen detained under that provision may be released through the U.S. Department of Homeland Security's ("DHS") exercise of its parole authority. *See* 8 U.S.C. § 1182(d)(5)(A). Release from detention under Section 1225(b)(2) through a grant of parole under Section 1182(d)(5)(A) requires individualized findings that the noncitizen is neither a flight risk nor a danger to the community. *See* 8 C.F.R. § 212.5(b) (stating that parole of a noncitizen detained under Section 1225(b) may be granted "only on a case-by-case basis . . . provided the [noncitizen] present[s] neither a security risk nor a risk of absconding").

The Government contends here that Jesus Alejandro G. A. is subject to mandatory detention under Section 1225(b)(2) because he is an "applicant for admission" who "has not been admitted." ECF No. 7 at 3–4. Jesus Alejandro G. A. effectively concedes that he falls under Section 1225(b)(2). ECF No. 9 at 2. The Government further contends that Jesus Alejandro G. A.'s parole, *see* ECF No. 8-3 at 2, was terminated when DHS detained him in March 2026 "based on the criminal charges against him as well as his lack of legal status to remain in the United States" and, therefore, he "is subject to resumption of his previous removal proceedings," ECF No. 7 at 6.

## II. Due Process

The Due Process Clause prohibits the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom

10

from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It is well established that the Due Process Clause applies to all "persons" within the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693 (citations omitted); *see, e.g.*, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country."); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) (holding that "all persons within the territory of the United States are entitled to the protection" guaranteed by the Fifth Amendment). Accordingly, because the Fifth Amendment entitles all "persons" to due process of law, noncitizens may challenge the legality of their detention through habeas corpus. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025).

Relying on *Banyee, Demore v. Kim*, 538 U.S. 510 (2003), and *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020),[10] the Government argues that

---

[10]   In addition to these cases, the Government also relies on *Jennings*. ECF No. 14 at 1–2. That case is inapplicable because it did not address the petitioners' due process claims. *Jennings*, 583 U.S. at 312 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits. Consistent with our role as a court of review, not of first view, we do not reach those

Jesus Alejandro G. A.'s constitutional argument is foreclosed and that he is entitled to no further process beyond his opportunity to oppose his removal. *See* ECF No. 14 at 2–4. The Court disagrees for the reasons explained below.

### A. *Banyee* and *Demore* Do Not Preclude Due Process Challenges to Detention Under Section 1225(b)(2)

The Government is correct that the Eighth Circuit in *Banyee*—and the Supreme Court in *Demore*, on which *Banyee* relied—held that mandatory detention pending the conclusion of removal proceedings is constitutionally permissible. *See Banyee*, 115 F.4th at 933 (quoting *Demore*, 538 U.S. at 527) ("[T]he [g]overnment can detain an alien for as long as deportation proceedings are still 'pending.'" (emphasis omitted)). But as even the Government recognizes, *see* ECF No. 7 at 8, *Banyee* and *Demore* involved due process challenges to mandatory detention under Section 1226(c), not Section 1225(b)(2), *see Banyee*, 115 F.4th at 930–31; *Demore*, 538 U.S. at 522–23. And the Government agrees that Jesus Alejandro G. A.'s case is not governed by Section 1226(c). ECF No. 16 at 1. Nevertheless, the Government argues that "there is no constitutionally significant difference between the detention provisions [of § 1226(c)] and the provisions in § 1225(b)." ECF No. 7 at 8.

The Court is unconvinced. There is some superficial appeal to the Government's argument because both Section 1225(b) and Section 1226(c) deal with mandatory detention. Going beneath the surface, however, it becomes clear that Section 1226(c)'s

---

arguments." (citation modified)). Instead, just like the Eighth Circuit did in *Avila*, the Supreme Court "remand[ed] the case to the Court of Appeals to consider them in the first instance." *Id.*

mandatory detention provision was meant to address specific concerns about a narrow class of noncitizens in removal proceedings based on congressional findings that do not extend to the much broader class of noncitizens detained under Section 1225(b)(2).

In *Banyee*, the petitioner, a lawful permanent resident, was convicted of armed robbery. *See* 115 F.4th at 930. He was placed in removal proceedings and detained under Section 1226(c). *Id.* Although he was initially granted cancellation of removal by an immigration judge, the BIA reversed and remanded. *Id.* On remand, the petitioner was ordered removed by the immigration judge, and he appealed the order of removal to the BIA. *See id.* The petitioner, who by this point had been detained in a county jail for one year, sought habeas relief while that appeal was pending, challenging his "lengthy detention" during the removal proceedings on due process grounds but not "directly contesting the grounds for his mandatory detention." *Id.* at 930–31. The Eighth Circuit rejected the petitioner's argument, concluding that "the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 931 (alteration in original) (quoting *Demore*, 538 U.S. at 526).

Similarly, in *Demore*, the petitioner had been convicted of at least one aggravated felony offense. 538 U.S. at 513. He did not "dispute the validity of his prior convictions" or the government's "conclusion that he [was] subject to mandatory detention under § 1226(c)," and he "conced[ed] that he was deportable." *Id.* at 513–14. Instead, the petitioner argued that his detention under Section 1226(c) violated the Due Process Clause because the government "had made no determination that he posed either a danger to society or a flight risk." *Id.* at 514. The Supreme Court rejected the petitioner's argument

13

and affirmed that his detention without a bond hearing was constitutionally permissible. *See id.* at 530. Critical to *Demore*'s holding—and *Banyee* to the extent it relies on *Demore*—was Congress's reliance, in enacting Section 1226(c), on findings supporting its "justifiabl[e] concern[] that deportable criminal aliens who are not detained [would] continue to engage in crime and fail to appear for their removal hearings." *Id.* at 513. The Supreme Court therefore reasoned that the "narrow detention policy reflected in 8 U.S.C. § 1226(c)," as applied to the class of criminal noncitizens in removal proceedings, was constitutionally permissible because "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 526, 528. In effect, the consideration of dangerousness and risk of nonappearance is already baked into Section 1226(c).

Importantly, under the version of Section 1226(c) that existed when *Demore* and *Banyee* were decided, the "vast majority of mandatory-detention cases" under Section 1226(c) involved noncitizens who had been convicted of criminal offenses, with "rare" exceptions involving, for example, noncitizens who were "thought likely to engage in terrorist activity."[11] *Nielsen v. Preap*, 586 U.S. 392, 398–99, 399 n.4 (2019); *see also*

---

[11] Section 1226(c) was amended in January 2025 and now also requires mandatory detention for noncitizens who have been "charged with" or "arrested for" certain qualifying crimes, whether by a state or the federal government. *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) (codified at 8 U.S.C. § 1226(c)(1)(E)). The Government does not cite, nor is the Court aware of, any cases discussing the due process implications of the current version of Section 1226(c), and instead relies on *Banyee* and *Demore*, which dealt with the previous version of Section 1226(c).

8 U.S.C. § 1226(c)(1) (1996).  As a result, any due process concerns regarding mandatory detention without a bond hearing under the previous version of Section 1226(c) were mitigated because those noncitizens, as part of securing their criminal convictions, would have received the "full procedural protections our criminal justice system offers."  *See Demore*, 538 U.S. at 513; *see also Gomez v. Bondi*, No. SA-26-CA-00727-XR, 2026 WL 753307, at *12 (W.D. Tex. Mar. 13, 2026) (noting that "the convictions themselves may stand in for the individualized determination that might otherwise be taken up at a bond hearing, by demonstrating either that the noncitizen is a danger to the community or a flight risk").

No similar logic applies to Section 1225(b)(2).  Detention under Section 1225(b)(2) requires only a determination that a noncitizen is an "applicant for admission" who is not "clearly and beyond a doubt entitled to be admitted."  Unlike Section 1226(c), there is no requirement that a noncitizen detained under Section 1225(b)(2) be formally accused or convicted of certain criminal conduct or any other "'personal activity' that Congress considered relevant to future dangerousness."  *See Demore*, 538 U.S. at 525 n.9; *see also Carlson v. Landon*, 342 U.S. 524, 541 (1952) (holding detention of Communist Party members without bond was constitutionally permissible because Congress's "understanding of their attitude toward the use of force and violence . . . to accomplish their political aims" provided "adequate ground for detention"); *Zadvydas*, 533 U.S. at 690 (citations omitted) (explaining that "government detention violates th[e] [Due Process] Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in special and narrow nonpunitive circumstances, where a special

15

justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint" (internal quotation marks omitted)). Unlawful presence within the United States, by itself, is not a criminal offense. *See Arizona v. United States*, 567 U.S. 387, 396 (2012) ("Removal is a civil, not criminal, matter."). Nor are there congressional findings under Section 1225(b)(2) like those discussed in the context of Section 1226(c) suggesting that a noncitizen who, like Jesus Alejandro G. A., has not been convicted of any criminal offense, and who is detained under Section 1225(b)(2) based on his allegedly unlawful presence in the United States, is likely to be a flight risk or a danger to the community. *Cf. Demore*, 538 U.S. at 518–21; S. Rep. No. 104-48, at 32 (1995) ("Congress should consider requiring that all aggravated felons be detained pending deportation. Such a step may be necessary because of the high rate of no-shows for those criminal aliens released on bond.").

It is true that "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Banyee*, 115 F.4th at 931 (quoting *Demore*, 538 U.S. at 522). But those rules still must comport with the Due Process Clause, for "[l]egislation cannot abridge a constitutional privilege." *Counselman v. Hitchcock*, 142 U.S. 547, 585 (1892); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (explaining that the "answer to th[e] question" of whether the Due Process Clause is satisfied "is not to be found in the . . . statute"). That *Banyee* and *Demore* found the detention framework in Section 1226(c) constitutionally permissible does not mean that the detention framework in Section 1225(b) is constitutionally permissible merely because both statutes require

16

detention without bond.[12]  This is the case especially considering the different classes of noncitizens to which they are directed: Section 1226(c) applies to criminal noncitizens, and Section 1225(b)(2) now applies to everyone else.  Therefore, the Court does not agree that Jesus Alejandro G. A.'s due process claim is precluded by *Banyee* and *Demore*.

## B.   *Thuraissigiam* Does Not Preclude Due Process Challenges to Detention Under Section 1225(b)(2)

The Government also points to *Thuraissigiam* to argue that "individuals in [Jose Alejandro G. A.'s] situation have 'no entitlement to procedural rights other than those afforded by statute.'"  *See* ECF No. 14 at 2–3 (quoting *Thuraissigiam*, 591 U.S. at 107).  Again, the Court disagrees.

In *Thuraissigiam*, the petitioner was apprehended within 25 yards of the southern border after physically entering the United States without inspection or an entry document.  591 U.S. at 114.  He claimed fear of returning to his home country, but an immigration officer determined that he lacked a credible fear of persecution, as defined by Section 1225(b)(1)(B)(v).  *Id.*  Accordingly, the petitioner was placed in expedited removal proceedings and detained pursuant to Section 1225(b)(1).  *See id.*; *see also* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  He then filed a habeas petition, but "made no mention of release from custody," and the petitioner did not dispute the lawfulness of his "confinement during the pendency of expedited asylum review."  *Thuraissigiam*, 591 U.S. at 115, 118.  Instead, the petitioner asserted new grounds for his purported fear of persecution and that due

---

[12]   And *Demore* did not address any process due to noncitizens subject to Section 1226(a)'s permissive detention scheme.

17

process required "judicial review of his allegedly flawed credible-fear proceeding." *Id.* at 114, 138.

The Supreme Court rejected the petitioner's claim. The Court acknowledged that "while aliens who have established connections in this country have due process rights in deportation proceedings . . . Congress is entitled to set the conditions for an alien's lawful entry into this country," and, "as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107. Since the petitioner "was apprehended just 25 yards from the border," he had "no entitlement to procedural rights other than those afforded by statute." *Id.* In other words, because the petitioner was an "applicant for admission" who was "detained shortly after unlawful entry," the process due to the petitioner was the right to a "determination whether he had a significant possibility of establishing eligibility for asylum," not "review of that determination or how it was made." *Id.* at 140 (citation modified).

*Thuraissigiam* does not preclude Jesus Alejandro G. A.'s due process claim here for at least two reasons.

First, unlike the petitioner in *Thuraissigiam*, Jesus Alejandro G. A. directly challenges the lawfulness of his detention without a bond hearing, not the fact that he has been charged with removability or the process by which that determination was made. *Thuraissigiam*'s due process analysis was limited to whether an "applicant for admission" has greater due process rights with respect to admissibility determinations than those provided by statute. But it did not address whether the petitioner's detention itself was unlawful or inconsistent with the Due Process Clause. *See id.* at 138–40 ("[A]n alien in

18

respondent's position has only those rights *regarding admission* that Congress has provided by statute." (emphasis added)). *Thuraissigiam* simply did not deal with a core habeas challenge to detention like Jesus Alejandro G. A.'s petition here.

Second, a key factual distinction is that the petitioner in *Thuraissigiam* was stopped by immigration authorities "within 25 yards of the border," immediately detained, and never released. *See id.* at 114. And *Thuraissigiam*'s holding, by its own language, is limited to noncitizens at the border—that is, those who are "seeking initial entry." *Id.* at 139–40. In other words, *Thuraissigiam* reinforced the understanding that noncitizens "on the threshold of initial entry stand[] on a different footing" than those who have "passed through our gates." *Mezei*, 345 U.S. at 212.

Jesus Alejandro G. A., by contrast, was paroled into the United States in May 2024 after presenting himself at a port of entry for inspection. *See* ECF No. 8-2 at 2. He has since established a residence in Minnesota, is authorized to work in the United States, and has established ties to his community. *See* ECF No. 1 ¶¶ 13, 16. The circumstances of Jesus Alejandro G. A.'s presence in the United States differentiate him from the petitioner in *Thuraissigiam* because noncitizens "receive constitutional protections when they have come within the territory of the United States *and* developed substantial connections with this country." *Verdugo-Urquidez*, 494 U.S. at 271 (emphasis added). *Thuraissigiam* itself suggests that this distinction is material. *See* 591 U.S. at 138 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)) ("[A]s to 'foreigners who have never been naturalized, *nor acquired any domicil[e] or residence within the United States*, nor even been admitted into the country pursuant to law,' 'the decisions of executive or

19

administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" (emphasis added)).

To be sure, *Thuraissigiam* discusses the so-called "entry fiction" relating to the legal status maintained by unadmitted noncitizens. That is the concept that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Id.* at 139 (internal quotation marks omitted) (citation omitted). But again, *Thuraissigiam*'s due process analysis focused on a noncitizen's due process rights with respect to admissibility determinations, not as to the noncitizen's detention pending that determination. *See id.* at 138–40. Said another way, a noncitizen who has been paroled into the United States has no greater entitlement to remain in the United States upon termination of that parole than a noncitizen who has only just arrived at the border. But the process that is due to determine whether a noncitizen may remain in this country—removal proceedings—is separate from the process to determine whether the noncitizen may be detained while the removability decision is made.[13]

As the Supreme Court has explained, the analysis as to the due process rights of noncitizens depends, in meaningful part, on where and when a noncitizen is detained:

---

[13]    Indeed, other than in the context of expedited removal proceedings under Section 1225(b)(1), immigration detention and removal proceedings are governed by different provisions of the INA. *See* 8 U.S.C. §§ 1225(b)(2) (detention), 1226 (detention), 1229a (removal proceedings); *see also* 8 C.F.R. § 1003.19(d) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond . . . shall be *separate and apart from*, and *shall form no part of*, any deportation or removal hearing or proceeding." (emphasis added)).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders.  But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, *whether their presence here is lawful, unlawful, temporary, or permanent*.

*Zadvydas*, 533 U.S. at 693 (emphasis added) (citations omitted); *accord Avila*, 170 F.4th at 1140–41 (Erickson, J., dissenting) (quoting *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 519 (5th Cir. 2026) (Douglas, J., dissenting)) ("[G]overnment intrusions have always been tolerated at the border that would be intolerable in the interior, for the obvious reason that citizens and noncitizens alike expect to be able to go about their business without having to show that they are 'clearly and beyond doubt entitled to be admitted' if taken, or mistaken, for an otherwise inadmissible noncitizen.").

Jesus Alejandro G. A. was detained within the geographic borders of the United States two years after he was paroled upon presenting himself for inspection at a port of entry.  ECF No. 8-2 at 2.  He has since established a residence, obtained authorization to work, and developed substantial ties to his community.  *See* ECF No. 1 ¶¶ 13, 16.  For these reasons, Jesus Alejandro G. A.'s case is meaningfully distinguishable from the cases on which the Government relies, and the Court concludes they do not preclude Jesus Alejandro G. A.'s due process claim here.

## III.   What Process Is Due

Once it is "determined that the Due Process Clause applies, 'the question remains what process is due.'"  *Loudermill*, 470 U.S. at 541 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  "The answer to that question is not to be found in the . . . statute."  *Id.*

21

Indeed, not all due process claims are the same. The government's reason for detaining a person is highly relevant to whether the detention is constitutional. And deciding what process is due ordinarily requires some form of interest balancing. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) (citation omitted) ("'[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances."); *Morrissey*, 408 U.S. at 481 ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). But "there can be no doubt" that the Due Process Clause requires, at a minimum, that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). Consequently, the Government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here." *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903); *see Wong Wing*, 163 U.S. at 238 ("[E]ven aliens shall not . . . be deprived of life, liberty, or property without due process of law.").

To determine whether civil detention violates a noncitizen's procedural due process rights, courts consider three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the

22

fiscal and administrative burdens that any such procedural requirement would entail.[14]

*Mathews*, 424 U.S. at 335 (citing *Goldberg v. Kelly*, 397 U.S. 254, 263–71 (1970)).

### A.     Private Interest

Jesus Alejandro G. A.'s "interest in being free from physical detention" by the Government "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Parham v. J. R.*, 442 U.S. 584, 600 (1979) (discussing the "substantial liberty interest in not being confined unnecessarily"). Jesus Alejandro G. A. has been deprived of that fundamental liberty interest.

In this case, Jesus Alejandro G. A. was paroled into the United States in May 2024 after presenting himself at a port of entry for inspection. *See* ECF No. 8-2 at 2. He has since established a residence, is authorized to work, and has established ties to his community in Minnesota. *See* ECF No. 1 ¶¶ 13, 16. Courts have recognized the "self-

---

[14]     The Government does not address the *Mathews* factors or Jesus Alejandro G. A.'s argument relating to those factors. The Government instead argues that *Mathews* is inapplicable because Jesus Alejandro G. A.'s claim sounds in substantive due process, not procedural due process, and that Jesus Alejandro G. A. "has no procedural due process right to a bond hearing on whether he is a flight risk or dangerous" under Section 1225(b)(2). ECF No. 16 at 4–8. But "there is often some overlap between the two analyses when substantive and procedural due-process claims are raised together based on the same facts." *Cummings v. Dean*, 913 F.3d 1227, 1237 (10th Cir. 2019). And in any event, Jesus Alejandro G. A. requests, in part, the opportunity to seek his release on bond. ECF No. 1 at 19. This is precisely the type of procedure that the Due Process Clause most typically demands. *See Smith v. Org. of Foster Fams. for Equal. & Reform*, 431 U.S. 816, 848 (1977) (citation omitted) ("[B]efore a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." (internal quotation marks omitted)); *Albright v. Oliver*, 510 U.S. 266, 275 (1994) (Scalia, J., concurring) (noting that the Due Process Clause "guarantees certain procedures as a prerequisite to deprivation of liberty").

evident idea that an individual who has been released from custody to live a productive life in the community obtains a protected interest in their 'continued liberty.'" *Abdirashid H. M. v. Noem*, No. 25-cv-4779 (JRT/EMB), 2026 WL 127698, at *4 (D. Minn. Jan. 9, 2026) (first quoting *Hernandez-Fernandez v. Lyons*, No. 5:25-cv-00773-JKP, 2025 WL 2976923, at *9 (W.D. Tex. Oct. 21, 2025); and then citing *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025)). And although Jesus Alejandro G. A. is currently subject to criminal prosecution in Minnesota, he was ordered released on bond in those proceedings. *See [G. A.]*, Index #12 at 1. In other words, assuming he abided by his bond conditions in relation to his criminal proceedings, he would not be in custody now if not for his immigration detention.[15] The Court therefore concludes that this factor weighs in Jesus Alejandro G. A.'s favor.

## B.   Risk of Erroneous Deprivation

Jesus Alejandro G. A. has "passed through our gates" and is therefore protected by the Due Process Clause. *See Mezei*, 345 U.S. at 212; *Zadvydas*, 533 U.S. at 693. It has long been understood that "administrative officers, when executing the provisions of a statute involving the liberty of persons, may [not] disregard the fundamental principles that inhere in 'due process of law' as understood at the time of the adoption of the Constitution." *Yamataya*, 189 U.S. at 100. "One of these principles is that no person shall be deprived of

---

[15]   Notably, Jesus Alejandro G. A. is detained in the Sherburne County Jail, which is the same facility where federal pretrial detainees are held. When assessing the first *Mathews* factor, courts may consider the conditions under which detainees are currently held, including whether a detainee is held in conditions largely indistinguishable from criminal incarceration. *See, e.g.*, *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025).

his liberty without opportunity, at some time, to be heard, before such officers, in respect of the matters upon which that liberty depends." *Id.* at 101.  Indeed, the Supreme Court has required individualized hearings for deprivations of interests less fundamental than Jesus Alejandro G. A.'s interest in being free from unnecessary detention.  *See Goldberg*, 397 U.S. at 268 (requiring an individualized hearing before termination of welfare benefits).

There is at least some degree of risk of erroneous deprivation here, and an "individualized bond hearing" at which both Jesus Alejandro G. A. and the Government can be heard on the issue of whether ongoing detention is appropriate "would alleviate th[at] risk." *Abdirashid H. M.*, 2026 WL 127698, at *4.  To be sure, detention during removal proceedings is a "constitutionally permissible part" of the removal process. *Demore*, 538 U.S. at 531.  But the government's authority to detain noncitizens is not limitless and should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their immigration proceedings; and (2) preventing danger to the community while those proceedings are ongoing.  *See Zadvydas*, 533 U.S. at 690.  Here, a bond hearing will ensure that the purpose of Jesus Alejandro G. A.'s detention is necessary to ensure his appearance at future immigration proceedings and to prevent danger to the community.  *Id.*; *see Seling v. Young*, 531 U.S. 250, 265 (2001) ("[D]ue process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed.").

Moreover, because Jesus Alejandro G. A. was paroled into the country, *see* ECF No. 8-2 at 2, the Government necessarily determined at that time that he "present[ed]

25

neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b). And given that Jesus Alejandro G. A. does not fit into the category of noncitizens detained under Section 1226(c) who, by virtue of having received the procedural protections of the criminal justice system, are not entitled to a bond hearing, *see Demore*, 538 U.S. at 513, 530, there is a risk that Jesus Alejandro G. A. will be erroneously deprived of his fundamental interest in remaining free from unnecessary detention, *see Hamdi*, 542 U.S. at 529; *Parham*, 442 U.S. at 600; *see also Yamataya*, 189 U.S. at 100–01; *Wong Wing*, 163 U.S. at 238. It may be the case that circumstances have changed such that the determination made upon his initial grant of parole no longer holds true. But Jesus Alejandro G. A. is entitled to present evidence to an immigration judge to show that he is not a flight risk or danger to the community, *see Zadvydas*, 533 U.S. at 690, and to rebut any contrary evidence offered by the Government to justify his ongoing immigration detention, *see In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) (identifying non-exhaustive factors for immigration judge to consider). The result may be a finding that Jesus Alejandro G. A. is not entitled to be released pending the conclusion of his removal proceedings, but this kind of individualized hearing will mitigate the risk of an erroneous deprivation of Jesus Alejandro G. A.'s liberty.

For these reasons, the Court concludes that this factor weighs in Jesus Alejandro G. A.'s favor.

### C. The Government's Interest and the Burden Imposed by Additional Procedure

Finally, the Government certainly has a substantial interest in removing deportable noncitizens and protecting the public. But those interests would be adequately served in

this case through a bond hearing to assess whether Jesus Alejandro G. A. is amenable to release while his removal proceedings are pending.

The Government makes no specific argument as to any of the *Mathews* factors, *see* ECF No. 16 at 4–8, and therefore makes no representation that providing a bond hearing to Jesus Alejandro G. A. imposes some significant administrative burden. The Government instead maintains that due process does not require it because Section 1225(b)(2) does not require it. *See id.* But, again, "[l]egislation cannot detract from the privilege afforded by the constitution." *Counselman*, 142 U.S. at 565. In any event, the limited burden imposed on the Government in providing such a hearing (which was done as a matter of course on all Section 1226(a) cases prior to the implementation of ICE's July 2025 guidance memo) does not outweigh Jesus Alejandro G. A.'s substantial liberty interest. *See Abdirashid H. M.*, 2026 WL 127698, at *5 (finding that a bond hearing "would impose minimal, if any, financial or administrative burden" on the Government).

In sum, Jesus Alejandro G. A. has established substantial connections within the United States, *see Verdugo-Urquidez*, 494 U.S. at 271, and his liberty interest is especially weighty, *Hamdi*, 542 U.S. at 529. And although the Government's interest is also substantial, the Court finds that the burden imposed on the Government here is outweighed by the value of the additional procedural safeguard of a bond hearing justifying Jesus Alejandro G. A.'s detention, *see Yamataya*, 189 U.S. at 100–01. This factor also weighs in Jesus Alejandro G. A.'s favor.

## CONCLUSION

The Court does not conclude that Jesus Alejandro G. A.'s detention, full stop, is unlawful. Rather, the Court concludes that continued detention without a bond hearing violates the Due Process Clause, considering Jesus Alejandro G. A.'s presence in this country and substantial ties to his community. Jesus Alejandro G. A. is entitled to present evidence to an immigration judge as to his amenability for release on bond. Even if the immigration judge denies bond, Jesus Alejandro G. A. will have received the process he is due. Accordingly, the Court grants Jesus Alejandro G. A.'s habeas petition insofar as he seeks an individualized bond hearing.[16]

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1. Jesus Alejandro G. A.'s Verified Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED** as follows:

   a. By no later than **May 26, 2026**, the Government must provide Jesus Alejandro G. A. with a bond hearing consistent with 8 C.F.R. § 1003.19(d);

   b. If the Government does not provide Jesus Alejandro G. A. with a bond hearing in accordance with this Order, the Government must immediately release Jesus Alejandro G. A. from detention; and

---

[16]   As a result, the Court does not reach and offers no view on Jesus Alejandro G. A.'s remaining claims.

28

2.      By no later than **5:00 p.m. on May 28, 2026**, the Government must provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order or, if no bond hearing was held, concerning the circumstances of Jesus Alejandro G. A.'s release from detention.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 18, 2026                                    *s/Laura M. Provinzino*

                                                       Laura M. Provinzino
                                                       United States District Judge

29